Good morning. I want to first recognize our colleague and friend, Judge Stearns, who is visiting from the District of Massachusetts and very kindly helping us out with these cases today. And thank the Council for being willing to adjust their schedules so that we could have argument this morning. That was a last minute change and the Court is truly grateful for your flexibility and willingness to come in and be with us at 9 o'clock today. We'll call our first case, Sutaj v. Attorney General. And I would be pleased to say your name, Counsel, but I don't know how to pronounce it, so I'll wait for you to get to the podium and instruct me. Good morning, Your Honor. My name is pronounced Marcella Geyers. Geyers, Ms. Geyers. All right. Thanks. You may proceed. Thank you. May it please the Court, Marcella Geyers, on behalf of Jeton Sutaj, the Petitioner, I'd like to reserve three minutes for rebuttal. This is an immigration case involving the Convention Against Torture codified in the Act, for short. The goal of this case for my client is to be granted relief under CAT, and we believe that there are two issues that will help us reach that goal. The way I've outlined my argument for today is to first state the issues, then the standard of review, and finally explain to the Court why we think the Court should rule in our favor. The first issue, there are two issues. The first is procedural in nature. The second is, I'm sorry, the first is substantive, the second is procedural in nature. The first issue is whether the Board of Immigration Appeals and the immigration judge reasonably were unreasonable in their factual finding that my client would not be killed if returned to Albania. And, of course, killing is a form of torture. You know, the thing that concerned me about the facts was that Mr. Sutaj talked about being this undercover police agent, but there's nothing in the record that really shows that he was, other than his simple description of it. Yes, and I would like to point the Court to the fact that his testimony was found credible by the immigration judge. And the way, when I look at the immigration judge and the Board's decision, the only way I can make sense of it, or I believe a reasonable person can make sense of it, is look as if his testimony would have been found not credible. I'd look at it as if the fact finder, the adjudicator, looked at his case under an adverse credibility lens. But if you look at the first proceeding, they didn't even consider Kat. They dismissed it basically because he had not established that he was a member of a recognizable group or party in society. So that information had not been necessary for the first decision. And when they sent it back for the decision on the Kat, there were instructions to provide more specific information about him. And they didn't really do it, did they? Well, when the Board remanded the case, it was specifically so that the immigration judge could consider the entire evidence. Because the first time the immigration judge denied my client's case, she did not even mention the expert witness, her testimony, or her written report. But it was on the Kat issue rather than the whole thing, right? Well, yes, no, you're absolutely correct. The Board did not agree with us that he married asylum or withholding of removal, so remanded solely for Kat and for further consideration of the entire evidence that was already part of the record. And the case was set for a Isn't your...doesn't your argument have to be this, that if one believes that Mr. Sutaj is credible, then no reasonable fact finder could reach any other conclusion than he will be the subject of a murder or a murder attempt? Well, no, our argument is if his testimony is found credible, and a reasonable person weighs his credible testimony together with the expert's testimony that corroborated his testimony, although corroboration is not a requirement, the objective media articles that were presented, and how his testimony really matches the current events unfolding in Albania, then a reasonable person could not conclude that he would not be killed if returned to Albania. Okay, well, you've added those other things in, but the point is, your position is the evidence of record can lead to only one reasonable conclusion. No reasonable person could look at this record and say, you know, we think you may be at risk, but that doesn't mean it's going to happen, right? Right, and an example I'd like to point this court to, for example, is in this country. If an FBI agent is killed by his targets, you better believe that there is, you know, that the informant working for him is probably at risk as well. And when I read these decisions, the only way I can make sense of it is, you know, his credible testimony was not given weight in this case. Well, it certainly is credible. What seems to be missing, the leg of the stool that I have is the fear of torture that has to be tortured by a state official or with the acquiescence of such an official. I can understand, you know, his fear. Let's assume that we accept everything he says is true about the undercover investigation of the Fokker brothers he claims to have been involved with as an investigator. But beyond that, the only official allegations that appear are some fairly scandalous allegations about Prime Minister Rama, who I think is either out of office or will be in the next month or two, and about his former interior minister. If you assume that this is going to be the source of persecution, how can we get there without a judicial notice problem? I mean, I would only know this by going to opposition newspapers in Albania and reading some of the things that have been said about ruling politicians, but there's nothing in Dr. Skroga's testimony that in any way connected him specifically with leadership in Albania, or him specifically with any of the work that he claims to have done that puts him in peril. Now, do you see what I'm getting at? That I just don't see where the threat comes from that Kat otherwise recognized. Yes, I understand that, and I would like to again point the Court back to the expert witness's testimony, who testified that the Froko brothers are in fact embedded in Albanian, in the Albanian government, and there's a high level of corruption. So independent of his testimony, she acknowledged that the Froko brothers have ties to higher ranking officials in Albania, not just the current Prime Minister, Eddie Rama. And there is, you know, the chance if this Court does enter a remand in our case, we could elaborate further on the acquiescence point. Our second issue in this case is, as I said, procedural. Well, before you get to that, I want to stick on the substance here, because at one point you seem to argue that nothing in the record indicates that since his departure from Albania, the government of Albania has not sought or is not actively seeking his cooperation in the case against the Froko brothers. That framing of it seems to turn the burden of proof on its head, right? Isn't it incumbent on you and your client to show, not that the government needs to show, that he's not being sought, but that no reasonable person could conclude anything except that he's going to be put in a position where he's killed? Yes. I understand, Your Honor. Maybe it's not framed correctly. Obviously, we understand the burden. It's ours. But it all comes down to the same thing. The judge and the BIA both said, look, he has not been called as a witness, therefore no future harm. And our whole point is the same. Not just because he has not been called as a witness does not show that he will not be called as a witness. There you go. You've just put your finger on it. Since you have to prove, I mean, we're assessing a likelihood, right? That's the job we've got at this point, is assessing a likelihood. And in assessing a likelihood, we have a very deferential standard in looking at how the BIA assessed the likelihood. Is it the case that no reasonable person could assess the likelihood differently than your client did in saying he is or isn't going to be called to be a witness? And it's on you folks to make the point that no reasonable person could assess that likelihood in a way other than you've assessed it, which is that he will certainly be called. That's the burden you're bearing, isn't it? Yes. Okay. I understand that, Your Honor. But at the same time, if we were to show, for example, that there's a subpoena out and he has been sought as a witness in the trial, then that makes our case stronger. But the fact that there is not one does not prevent him from proving his merits under CAT, and that is our whole point. Okay. Now, I stopped you before you could get to your procedural point. What's that? Our second issue is a procedural point, which is whether the immigration judge and the IJ violated the regulatory framework in the CAT regulations that require them to consider all the evidence. And as in the P.S. Chikung case, that this honorable court issued a decision, and that case is very similar to this one. And we argue that the BIA and the IJ just simply did not finish doing their job well. They did not, their decisions, they're just two bare bones. They did not properly address or assess or weigh or give all of the evidence meaningful consideration so that we could then come here for proper review. They conclude, citing cases, that we agree with the holding. They just don't, they're different from our case. And I, it just came down to whether there's a violation. That's a little tough for Rodejo though, isn't it, to say, yeah, they looked at this stuff. They just didn't look at it hard enough. Well, yes, Your Honor. And I understand that they didn't tell us why, as in the P.S. Chikung case, you know, why the fact that, you know, three witnesses in the case against Dritana Maj have mysteriously disappeared. You know, Dritana Maj was murdered by the Faroqo brothers. The Faroqo brothers know of his existence. They attempted to kill him in two separate occasions, one before Dritana Maj's death and one after. You certainly have evidence that you can cite and have done so effectively. But when you say they really haven't explained, they cite, the BIA cites NREJ-JFF and they talk about a concatenation of hypotheticals. Isn't that their explanation, that we think there's too much guesswork here for this to be a sound basis for grant and cat relief? Absolutely. And the matter of JFF factually differs entirely from our case. The reason Judge Fedt, the respondent in that case, requested to make a case and a basis for cat. So apart from link and a chain of events in my client's case, you know, he did perform undercover work for the Faroqo brothers under the tutelage of Dritana Maj. The Faroqo brothers know of his existence, attempted to kill him. There currently is still an active trial, an active criminal case against Armin Faroqo for the murder of Dritana Maj. Let's just go back to what Judge Shorten was asking. Isn't the problem is that you're really faulting the IJ for not undertaking an independent investigation of circumstances in Albania. His proper role, or as the case may be, is to listen to the expert testimony that your client put on. The expert witness that you had talked generally about the conditions in Albania, but couldn't verify anything in a corroborative sense of what your client claimed about what placed him in peril in Albania. I'm not sure it's the appropriate role of the immigration judge to, on his or her own, so spotty begin an investigation of political circumstances in Albania and the specific circumstances of your client. Isn't that... I understand, Your Honor, and we're certainly not asking the immigration judge to undertake her own investigation. All I'm asking her to do is to give us a give the evidence a meaningful consideration based on what has already been presented, and I would argue that the evidence presented by the expert is not generalized, not generalized country conditions. Actually, she testified independent of my client's testimony that the Faroqo brothers do in fact exist, and they have ties to higher ranking officials. I must say, I did look up the Faroqo brothers on the internet. If it's not the Bar Association, we're very upset with you. Yes. But your expert witness, she couldn't really, though, verify specific details of his claimed involvement in events in Albania. I mean, she didn't know that he'd traveled fairly freely overseas, that he'd gone back to Tehran without apparently any fear of retaliation in doing so. She couldn't really verify that or corroborate that he'd actually worked for the police who was assassinated. Yes. Can that be the fault of the immigration judge? And going back to the fact that my client's testimony was found credible, I would point the court to that. His credible testimony did fill in those gaps. Okay, thanks very much, Ms. Geyers. We'll have you back on rebuttal, Mr. Hurley. May it please the court, my name is James Hurley, and I represent the Attorney General. This case should be, this petition for review should be denied for two reasons. First, substantial evidence supports the agency's denial of cat protection, and no record evidence compels a contrary result. Second, Mr. Sutaj's due process argument lacks merit. He's claimed that the board failed to properly consider the possibility of future torture, lacks merit. What would impress the Board of Immigration Appeals if this set of facts doesn't appeal to them, when you've got somebody who the IJ finds credible, and the BIA doesn't dispute that in any way, they accept the credibility of the man, and he tells a story of being involved in undercover investigation of corruption at the highest levels of the Albanian government and society. And the person he worked for is dead, and he explains that he's been threatened in pretty dramatic ways. If you can't get the government of the United States to recognize you're at risk here, what would it take, Mr. Hurley? Well, again, this goes to the burden of proof that Mr. Sutaj had, and the immigration judge was the fact finder, and she listened to his testimony, and she found that he was credible. But you also, if you look at her decision too, she said that his testimony matches up with what was contained in his application and his declaration, but she also had some misgivings about his cross-examination. It was supposed that during this two-year period that he was in hiding, that he went to Italy twice on his own passport when he was worried about being killed. He also went to Montenegro once. So even though he was found credible, he didn't meet his burden of proof to show that it was more likely than not that he would be tortured or killed with the acquiescence of the Albanian government. So even though he was credible, he didn't meet his burden of proof, and when you look at Dr. Arsovka, her expert report and her testimony, again, I point to the fact that everything particular to him came from him, her interview of him and his brother-in-law. Yeah, but the government accepted all that. When you said everything came from him, this is Ms. Geyer's point, I take it, which is how can the only way to read the conclusion is to say you said he was believable, but you really don't think he's believable. Well, he's credible, and credibility is not an issue here, but... Okay, so if you accept he's believable and that the story he's told is true, then how is it that you don't accept, I guess I'm trying to push you to meet head-on her argument, which I understand to be there's a fundamental disconnect. Either he's believable, and if he's believable, he's told a tale where rational people would fear for their lives, or he's not believable, which is it? So attack that argument head-on, if you would. Well, it has to do with the specificity to him, and even though he's credible, and his testimony and his claim was accepted that he worked for Triton-Lamarge for that time, two years, but again, he wasn't, the immigration judge and the board affirmed the fact that he wasn't tortured in the past. There was an instance where there was the roadblock, and there were guns fired at him. I'm not sure I'm following the logic of that, the fact that we're not talking about asylum here and past persecution, right? We're talking about a cat claim, and whether it's more likely than not he'll be tortured by or with the acquiescence of the Albanian government, and his assertion is there is going to be acquiescence. In fact, I've got the goods on the prime minister, and they're going to want me dead, and in fact, they've already killed the guy I reported to. That's the argument I've got, and the IJ who heard him tell that story said, I believe him. Now, if you believe him, how do you get to, but you're okay if you go back? That's what I understand them to be driving at hard, and what I'm hoping you'll be able to explain to us why you don't have to worry about that. There's a reason not to worry, even if you accept his argument or his story. You don't have to worry. Reasonable people could say he's not going to be at risk. In the torture analysis, you do consider whether or not there was past actions of torture, so the immigration judge did consider that, and she acknowledged that one incident, and she said that didn't rise to the level, but then she also discussed the fact that he hadn't been called, and I guess there have been two proceedings against Mr. Arvin Proku, and in neither case, he has been called as a witness, and I guess counsel said that the case against Arvin Proku is still going on now, and if it was a subpoena for him to testify, then that would be a totally different case, and that would be a grounds for a motion to reopen. So your point is you don't have to, you're not compelled on that full record. Correct, and that's the standard here. The standard of review is whether or not the whole record as a whole compels the conclusion, and the immigration judge also found that Mr. Sutaj, none of his family have been targeted in the time that he's been in the United States. There was some, I guess in 2015, there was a some shadowy people came, asked about him, but no family members who lived in his, continue to live in his hometown, have ever been targeted, and... But would you agree that even absent a present threat, a showing of likelihood of torture would be enough to satisfy that? If he had shown that to the immigration judge and the board, and if he showed to you that the record compelled the case? Well, to follow on Judge Jordan's point, the government accepted the fact, at least didn't contest Dr. Arstotzka's contention that Albania is a country rife with corruption, that no dispute but that the Lamaj had been assassinated, no dispute but the Foko brothers are major sinister influences in their country, and her conclusion that they wield power, even though not in an official capacity, through other elected officials with whom they have influence. So the government accepted all of that. Yes, the... Wouldn't that be enough, then, to satisfy the concern I have? But it has to be specific to him, to Mr. Sutaj. He, the, Dr. Arstotzka established, and there was no dispute, that Albania is rife with corruption, and that the Foko brothers run a really dangerous syndicate, but again she, and that's what the immigration judge was getting at, that Dr. Arstotzka showed, based on general evidence, how dangerous it is in Albania, but then in order for Mr. Sutaj to meet his burden of proof, he had to show that him particular, that he was in danger, and that just wasn't there. And if you look at the record as a whole, you know, when they were questioning Dr. Arstotzka about Mr. Sutaj's you know, he worked, but written homage, or whether or not she, she didn't, she wasn't even aware that he'd went to Italy twice during this two-period, two-year period when he was supposed to be hiding in fear for his life constantly. So your, your summary of the things in the record that indicate that the record as a whole doesn't compel the conclusion that he'll be tortured with, or... Give us, give us this, give us the summary. You've said he went to Italy twice, he went to Montenegro once, which showed he could leave and come back, and not, he thought he wasn't at such risk that he could go and come back. Is that the point? Correct, and that came up on, and the immigration judge mentioned that when she said he was credible, but she had problems with it, and she said that fact came up in cross-examination, and he didn't say that at first, but once that was presented, his, his Albanian passport showed he went to Italy twice, and that didn't come up, so that kind of weakens his claim, but she said he was credible because his testimony matched what was in his application, his declaration. And, and the other points that you're relying are, are that the Frocco brothers, there have been prosecutions, and he hasn't been under subpoena or called, is that right? Correct, and that, and that would change our case if he hadn't been. And, and you're relying on there being no evidence in the record of threats to his family, is that? Yes. Okay. Is there anything else, you've mentioned those three categories, is there anything else that you're relying on to say, look, the record as a whole doesn't compel a contrary conclusion to what was reached by the IJ and the BIA? I think those three would do it, and I think, as the, as the board said, he can't string together this series of hypotheticals saying that this may happen, he has to show, he had to prove everything was more likely than not going to happen, and you can't meet your burden of proof for CAP by just stringing along these hypotheticals that might happen. Well, just stringing along these hypotheticals, that's a, that almost makes it sound like the government is, is back to saying his concern is fanciful. Lutash is dead. I mean, that's not a hypothetical, that's a historical fact. If you or I were the ones reporting to Mr. Lutash and we discovered that he was dead, I'd be pretty fearful, wouldn't you? That's true, but then you have to look at the record as a whole, and if someone was really scared, would he go to Italy twice on his own passport and voluntarily come back using his passport if, if everybody was out to get him all the time? So that kind of, if you look at the record as a whole, even though he was found credible, that kind of undercuts his... Does this guy assume that he and coming back somehow puts him at risk? What's the logic there? What is it about going to Italy and coming back, which shows I'm not scared of the fruit? Well, his whole claim was that he was in hiding for two years. He said that Mr. Lutash told him to go to his hometown and lay low, and so he said, you know, I was in hiding for two years, but then during this two, two-year period, he went to Italy, and I think, I'm not sure exactly how long it was, but it was more than a couple of weeks, and he used his own passport, and if he was worried that the acquiescence question, whether or not the government would be, would be involved, or they would acquiesce to somebody torturing him, they could have, um, why would you travel on your own passport? What you're trying to make is, why didn't he claim asylum in Italy? Correct, yeah, and he went to Montenegro. He could have done that there as well, so that just undercuts the case as a whole. Maybe feel safer in the U.S. than in Italy or Montenegro, maybe? That's true, but he could, and he said his sister lives in Italy too, so it sounds like he didn't have support there as well. Okay, um, the second point I'd like to talk about is the due process argument, how it lacks merit. The first thing I'd like to point out was that Mr. Sutash didn't exhaust the issue to the board. The immigration judge was the fact finder, so in his appeal to the board, he didn't mention anything about a failure to consider the possibility of torture. That just came up in the brief to the Third Circuit, and what, and how they phrased it too, was that the board violated due process by upholding the immigration judge's finding, so it's kind of a confused point, but because he didn't exhaust any claim as far as immigration judge, there's no jurisdiction for you guys to consider that. Just that due process claim, though. I mean, you're not arguing a lack of jurisdiction as to the other. No, it's the due process. Right, okay. So that's the first point about the due process, that it wasn't, and I guess they could bring the due process argument saying the board did something, but what they're saying is that the board violated due process by upholding the immigration judge's point, so, and then second, if you consider that claim of merits, there is no merit to it, because due process means that he was given a full and fair hearing with regard to his cap claim, and in this case, that is exactly what happened, because the board, in the first case, sent it back down, sent the cap claim back saying that it wasn't developed enough, the factual and legal analysis, so it actually sent it back down to the immigration judge again, and she, they afforded him six months to, for Dr. Osofka to present another report, and there was another merits hearing, so the claim that there was no, that there was a due process violation completely lacks merit. Okay. Thank you, Mr. Herman. Thank you. Let's go to Sue Rebello. Can it please the court? It seems, it seems like the government is holding my client to a higher standard. The standard in CAD is just preponderance of the evidence, more likely than not, not beyond a reasonable doubt, not, he is being called as a witness now, there is a subpoena standing there for his needs. True, but the standard embodies an additional standard, which is when we are dealing with assessing likelihood, which is a factual question, you have to show that no reasonable person could disagree that the outcome should be different than what the government said. Now, that's a very high standard, isn't it? It is, your honor. So, recognizing that we are operating with that standard as to the factual assessment of the likelihood of the torture, how is the government wrong in saying, yes, there is certainly evidence in Mr. Sutaj's favor, but look at these three categories, and you heard me reflect them back, what I had heard Mr. Hurley say, why don't you take those on directly if you would? Why is it that those three categories of evidence or lack of evidence that they point to don't put the government in a position to rightfully say reasonable minds could disagree on the likelihood? And I think we go back to issue one, tying in with issue two, which is there is no meaningful consideration of the evidence. I am not asking them, at issue one I am asking them, agree with me, and obviously a reasonable person would agree with me, but issue two is tell me why, and therefore set the record so that I can meaningfully take this case to be reviewed by a higher court. So, going back, the IJ and the BA were just too quick to say, he has not been called as a witness, therefore no future harm. And they get to cases that say there is no evidence specific to respondent. It seems to me that they are requiring us to meet a higher burden. They want something with his name on it. When his testimony was found credible, why would we have to show something with his name or corroborate his credible testimony that he was in fact performing undercover work for Datan Lamaj? To me, that is holding us to a higher standard. And regarding issue two that the government brought up, we did exhaust the issue. We asked the IJ to follow the regulations, to consider all relevant evidence in a brief to the board after the IJ denied the case a second time. And we reminded the board that the IJ committed error in denying my client's CAT application and holding that he did prove it was more likely than not that he would be tortured if returned to Albania. I did not phrase this all that well, but given the deference that courts usually give to the executive branch when it comes to matters of foreign affairs, would you somewhat inappropriate for us in a decision to accept as true allegations made against the sitting Prime Minister in another country based simply on the kind of record we have before us? I would agree that yes, this court should take my client's credible testimony in consideration as well as the expert's testimony who testified as to the current events unfolding in Albania. And the expert also testified that the Ferocco brothers do, in fact, have a tie with Eddie Rama. And this is apart from my client's credible testimony. So I would argue yes. All right. Thank you very much, Ms. Myers. And thank both counsel for a well-argued case. We've got the matter under advisement.